**L. Tyson BETTY, Plaintiff,**

v.

**LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, Limited, and The North British and Mercantile Insurance Company, Defendants.**

Civ. A. No. 1981.

United States District Court
W. D. North Carolina,
Asheville Division.

Oct. 17, 1961.

---

Adams & Adams, and Francis J. Heazel, Asheville, N. C., for plaintiff.

Williams, Williams and Morris, Asheville, N. C., for defendants.

WARLICK, Chief Judge.

At the close of the evidence offered by the plaintiff, the defendants under Rule 41(b) Federal Rules of Civil Procedure, 28 U.S.C.A., moved the court for a dismissal of plaintiff's claim on the ground that upon the facts and the law the plaintiff has shown no right to relief. Following the argument of counsel and being of the opinion that the motion of the defendants was good, and should be allowed, and obedient to Rule 52(a), I make the following findings of fact and conclusions of law.

This is a civil action instituted by plaintiff, the assignee of the Biltmore Tire and Recapping Company, Inc., a North Carolina corporation, to recover for the loss of 1,024 recapped automobile and truck tires of the value of $11,376.64, under the terms of two policies of insurance issued to plaintiff's assignor by the defendants herein. Plaintiff, at the times complained of, owned all of the outstanding common stock in the Biltmore Tire and Recapping Company, Inc., and was its president and general manager.

This action was originally instituted in the Superior Court of Buncombe County in the Western District of North Carolina and later, under sections 1332 and 1441, Title 28 U.S.C., was moved on petition to this court for that both defendants are citizens of England, each being a corporation organized under its laws.

On September 27, 1957, and for a period of three years the defendant, The Liverpool and London and Globe Insurance Company, Limited, issued to the Biltmore Tire and Recapping Company, Inc., its commercial property coverage policy of insurance No. 42–73–67, in the amount of $16,500 and was paid the premium agreed upon. Prior thereto and on June 13, 1957, the defendant, The North British and Mercantile Company, for a stated premium, issued its policy No. 805740 to the Biltmore Tire and Recapping Company, Inc., in the amount of $43,000, and for the purpose of this controversy both of the policies issued were in the same form and content. Both policies were in full force and effect during that period of time involved in which the recovery herein is sought.

Under the terms of the two existing policies of insurance defendants were in agreement and the policies of insurance so provided that each defendant would pay equally in any loss that arose thereunder.

The defendants, filing a common answer set up, among other defenses, the invalidity of the assignment of the policies of insurance to the plaintiff; the failure of the insured to give written notice to the defendants of the loss incurred; and that this action was not commenced within that period of time set out in the policy as twelve months after the inception of the losses allegedly sustained. That the loss, if any, was not covered or insured against by either of said policies.

And more particularly interpose the following defense:

"C. (Peril) This policy does not insure against any loss caused by or resulting from; * * * 4, unexplained loss or mysterious disappearance of property (except prop-

erty in the custody of carriers or bailees for hire) ; or loss or shortage of property disclosed on taking inventory".

The evidence discloses and there seems to be little if any controversy therefrom that the Biltmore Tire and Recapping Company, Inc., operated its place of business on McDowell Street in the City of Asheville, and in a building owned by plaintiff. It was engaged in the sale of automobile accessories, gas, tires, etc., and generally did a large business in recapping automobile and truck tires. That it suffered a property loss during the period between April 1, 1960 and September 6, 1960, of approximately 1,024 recapped tires of the value of $11,376.64, being that sum sought as a recovery herein.

That the premises of the insured were completely fenced by a Cyclone type fence on each end of the building proper and running completely around the front and sides of the property. That the rear of said property abutted a hill, probably some 60–75 feet high, on the top of which was located a barbed wire fence of five or six strands. The height of the fence being approximately eight feet. That the insured customarily kept the used automobile carcasses or those to be recapped in a building and at the times in which the losses herein are claimed the recapped or finished tires were kept on shelves in the fenced in area. All of this is shown from the photographs offered in evidence as exhibits which show the appearance of the property. That the two gates through which entrance was had to the lot were kept open at all times during the day, but were closed when business ceased at 6:00 p. m. each night.

It seems that the tire company through its new operators is following a more preferable way of doing business, and now keeps the old automobile carcasses on the outside in the lot, and the recapped tires which are of value on the inside of the building.

The insured's method of determining the value of the property on hand for all purposes intended was to take a total count or inventory at the end of each quarter or four times during a twelve months period. The evidence shows that these inventories were taken at the end of March, June, September and December of each year and that the inventories were taken by plaintiff herein, together with some one or more of his employees. That at the close of the inventory taken at the end of March 1960 a profit was shown in the insured's operation but that in spite of increased sales the inventory at the end of the second quarter reflected a loss, whereupon plaintiff requested of the B. F. Goodrich Company, whose business he represented, in the Asheville area, to dispatch someone to inquire into and to undertake to discover why a loss was reflected in the inventory in spite of the increased sales. A representative of the B. F. Goodrich Company from Atlanta came to Asheville around the first of September, 1960, and in conjunction with the plaintiff and an operating manager of the B. F. Goodrich Company from Charlotte, made a full inventory, completing it on September 6, 1960, when it was determined that through some unexplained loss or from some mysterious disappearance the insured was short in its inventory in the amount of 1,024 recapped tires. That this apparent loss was determined by taking the opening inventory of March 31, 1960 and adding to such inventory the tires processed during the period involved, which in effect brought about a total to be accounted for. From that accounting the sales during the period were subtracted from the inventory which reflected the number of tires in stock on September 6. Those then taking the inventory subtracted the stock actually on hand with the company and in that method the total involved loss was determined. This from the evidence was found to be 1,024 over a period of five months and six days.

That on September 8, 1960 one James Love who testified as a witness for the plaintiff, pleaded guilty to taking seven tires from the outside of the fence surrounding the insured's property, under circumstances as shown in his testimony,

all of which were recovered by the police force in Asheville and returned to the insured. That these tires had an estimated value of $50.

Prior to September 6, 1960 and following the taking of the complete inventory of the entire business of the insured, none of its officers were aware of any shortage existing in its property and only learned thereof through the inventory taken.

That on April 1, 1960 through September 6, 1960, the insured did not at any time report any thefts or burglaries or loss of property to the Asheville police department or any other agency in Buncombe County and that prior to September 6, 1960 the insured did not know of any thefts of property by James Love or anyone else.

Among other things plaintiff testified "We didn't have any idea there was a shortage September 6 when we took the inventory"; "didn't have any idea at that time that there was a shortage;" And subsequently on being asked, "Now, Mr. Betty, isn't it true that this shortage, this loss about which you complain, was discovered upon your taking inventory on September 6, 1960?" To which question plaintiff made the following answer: "That is not entirely correct. The loss would have to be established and the only way through good accounting records you can establish a loss is by taking an inventory, and that is the first time I had any knowledge that there was a loss."

Plaintiff was further asked, "Now, the figure of 1,024 tires which was discovered by the inventory of September 6, 1960 is as far as you are concerned, an unexplained loss, is it not?" To which the plaintiff answered, "Right." Plaintiff was further asked, "Isn't that correct?" To which he replied, "Yes." Plaintiff further testified that the only way that a shortage could be determined was through an inventory and that through the inventory then taken a discovery of the loss of the tires was determined. As the evidence shows, many additional questions were asked of plaintiff and answers given, another of those being: "Other than those seven—referring to the James Kelly Love episode, this disappearance is completely unexplained, is it not, at this time?" To which the plaintiff answered, "Correct, yes."

These particular quoted portions of the evidence are purposely set out in these findings for all purposes intended, but my ruling is predicated upon all of the evidence offered by the plaintiff, as shown from the record of the trial had before the court without a jury.

I conclude that since each of the two policies contained the North Carolina Commercial Property Form No. 146–1 wherein it is set out in bold type, among other things, that "This policy does not insure against any loss caused by or resulting from;—4, unexplained or mysterious disappearance of property, or loss or shortage of property disclosed on taking inventory," that plaintiff could not recover for that all of the evidence indicates that the claimed loss of the property was not known prior to and only became known and was disclosed on the taking of the inventory on September 6, 1960. That since the defendants had purposely contracted to insure with those exclusions as embraced in the policies and the insured had accepted such, that the action could not be successfully maintained and a recovery had, for that from the evidence offered it appears that plaintiff's loss does not come within the terms of the policies of insurance issued.

Thereupon on such conclusion the action was accordingly dismissed as has been herein set out.

Counsel will submit judgment for signing.